IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JULIA TAYLOR,

       Plaintiff,

vs.                                          Civ. No. 07-135 MV/LFG

COUNTRYWIDE HOME LOANS, INC.,
TAMIKA HODGES, SCOTT LAFORTEZA,
and SHERRI FITZ,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Remand to State Court or, in the Alternative, to Stay this Action Pending the Adjudication of the Related Foreclosure Suit, filed March 8, 2007, **[Doc. No. 7]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED**.

## BACKGROUND

This case arises from a mortgage refinance of Plaintiff's home in Cedar Crest, New Mexico.  On January 12, 2007, Plaintiff filed a complaint in New Mexico state court against Countrywide Home Loans, Inc., Tamika Hodges, Scott Laforteza and Sherri Fitz, alleging violations of the New Mexico Home Loan Protection Act, New Mexico Unfair Trade Practices Act, and the New Mexico Loan Brokers Act as well as negligent misrepresentation, fraud, intentional infliction of emotional distress, *prima facie* tort, and breach of the duty of good faith and fair dealing.  Approximately four days later, Deutsche Bank National Trust Company

filed a foreclosure action on Plaintiff's home in New Mexico state court.  In the foreclosure

action, Plaintiff asserted cross claims for violations of the New Mexico Home Loan Protection

Act, the New Mexico Unfair Trade Practices Act, and the New Mexico Loan Brokers Act as well

as negligent misrepresentation, fraud, intentional infliction of emotional distress, and *prima facie*

tort claims against Countrywide Home Loans, Inc., Tamika Hodges, Scott LaForteza and Sherri

Fitz.  Defendants removed Plaintiff's action to federal court on February 8, 2007, based on

diversity of citizenship.  The foreclosure action is proceeding in state court.  In her instant

motion, Plaintiff does not dispute that this Court has jurisdiction over the removed action

(hereinafter referred to as the "federal action") but requests that the Court abstain from

exercising jurisdiction and remand the case to state court or, in the alternative, stay consideration

of the case until the state foreclosure action (hereinafter referred to as the "state action") is

resolved.

## DISCUSSION

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-14 (1976).  "The

doctrine of abstention, under which a District Court may decline to exercise or postpone the

exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District

Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases

can be justified under this doctrine only in the exceptional circumstances where the order to the

parties to repair to the State court would clearly serve an important countervailing interest."

*County of Allegheny v. Frank Mashuda Co*., 360 U.S. 185, 188-189 (1959). "[I]t was never a

doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit

merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n. v. Southern R.*

2

*Co.*, 341 U.S. 341, 361 (1951) (Frankfurter, J., concurring in result).

Except in actions for declaratory judgment, in which a court has broader discretion to abstain, *see generally Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), a district court's decision to abstain is generally appropriate only in order (1) to avoid a federal constitutional issue where that issue may be mooted or altered by a state-court ruling on a state-law question, *see Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941); (2) to avoid hindrance of such state functions as criminal prosecutions or the collection of state taxes, *see Younger v. Harris*, 401 U.S. 37 (1971); (3) to conserve federal judicial resources in those "exceptional circumstances" where there is concurrent state-court litigation whose resolution could result in "comprehensive disposition of litigation," *Colorado River*, 424 U.S. at 813 & 817 (internal quotation marks omitted); or (4) to defer to state resolution of difficult state-law questions that involve local regulation and administration or important matters of local public policy, *see, e.g., Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593 (1968) (per curiam); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  But for these excepted areas, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817.

In her motion, Plaintiff argues that the Court should abstain from exercising jurisdiction over this case based on *Burford*, *Kaiser* and/or *Colorado River* abstention.[1]

_____

[1] Although the majority in *Kaiser Steel* did not identify the abstention doctrine applied in that case, it was characterized as a *Burford* abstention case by the three concurring justices in that case and by the Supreme Court in *Colorado River*.  *See Kaiser*, 391 U.S. at 594-5 and *Colorado River*, 424 U.S. at 814.  Thus, while Plaintiff addresses *Kaiser* and *Burford* separately, the Court believes that *Kaiser* is more properly considered as a *Burford*-type abstention and will address Plaintiff's arguments under *Kaiser* and *Burford* together.  In *Kaiser,* the Supreme Court did clarify that while dismissal is typically required in *Burford* cases, in certain limited circumstances, an abstaining district court may retain federal jurisdiction "in order to insure a

## A. *Burford*-type Abstention

The *Burford* doctrine provides that where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. at 361, 109 S.Ct. 2506 (quoting *Colo. River,* 424 U.S. at 814). "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 728 (1996) (internal quote and citation omitted).

The *Burford* doctrine was first articulated in *Burford v. Sun Oil Co*., 319 U.S. 315 (1943), an action to enjoin enforcement of a Texas Railroad Commission order that granted an oil drilling permit. Even though the federal district court had subject matter jurisdiction on the basis of diversity and a federal claim of denial of due process, the Supreme Court held that the district court should abstain from hearing the case because the state had centralized the regulation of oil and gas matters with the Texas Railroad Commission and provided for adequate review in the state courts. The Supreme Court concluded that federal court review would lead to conflicts in the interpretation of state law, thereby frustrating policy. The reasonableness of the permit in

---

just disposition of [the] litigation should anything prevent a prompt state court determination." *Kaiser*, 391 U.S. at 594.

that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields.

In *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), the Supreme Court affirmed the decision of the district court to stay federal proceedings to allow Louisiana's highest court an opportunity to rule on a disputed question as to the meaning of a state statute governing the state's power of eminent domain. The Supreme Court reasoned that such a stay was warranted by the "special and peculiar nature" of eminent domain proceedings.  *Id*. at 28. Abstention in that case "avoid[ed] the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities" that could arise when a federal court decided issues that "normally turn on legislation with much local variation interpreted in local settings." *Id*.  Similarly, in *Kaiser Steel Corp. v. W.S. Ranch Co*., 391 U.S. 593 (1968), the Court held that "[s]ound judicial administration require[d]" abstention where a state-law water-use issue was of vital concern to the state, and a declaratory judgment action was pending in state court. *Id*. at 594

*Burford*, however, "does not require abstention whenever there exists [a complex state administrative] process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv.,*  491 U.S. at 362 (quotation omitted). Instead, "[t]his balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush,* 517 U.S. at 728 (quotation omitted). Because *Burford* abstention is concerned with the potential disruption of a state administrative

5

scheme, rather than the mere existence of such a scheme, the Court must look behind the action to determine whether it implicates the concerns raised in *Burford*.

Plaintiff has provided insufficient evidence to demonstrate that a *Burford*-type abstention is appropriate in this case. Plaintiff argues that "Federal interpretation of the New Mexico body of law dealing with abusive mortgage lending would substantially disturb the extended state regulatory scheme." The only evidence provided in support of this statement, however, is that New Mexico has enacted certain legislation regulating mortgage lending, *i.e.*, the Mortgage Loan Company and Loan Broker Act, NMSA 1978, § 58-21-29(A)(2001), and the Home Loan Protection Act, NMSA 1978, § 58-21A-9(A)(2003), and that certain administrative agencies have been delegated to enforce these statutes.

There is no evidence that abusive mortgage lending is a "policy problem[] of substantial public import whose importance transcends the result in the case then at bar." *New Orleans Public Serv.,* 491 U.S. at 361. While the New Mexico State Legislature did find, in enacting the Home Loan Protection Act, that "abusive mortgage lending has become an increasing problem in New Mexico," this statement, standing alone, is insufficient to establish that mortgage leading is a policy problem of substantial public import.

Plaintiff argues that the fact that the New Mexico legislature enacted legislation addressing mortgage lending establishes that mortgage lending is a vital concern. *See* Plaintiff's Response at p. 5 ("[T]he New Mexico legislature has established that abusive mortgage lending is a concern vital enough to enact specific legislation."). The mere enactment of legislation, however, is insufficient to establish that an issue is of such substantial public import that a federal court should abstain from exercising jurisdiction. Indeed, to hold otherwise would require the Court to defer jurisdiction any time a state enacts legislation addressing an issue--a

result clearly contrary to the Supreme Court's statement that "the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush,* 517 U.S. at 728 (quotation omitted).

Furthermore, there is no indication that the exercise of federal review in this case would disrupt state efforts to establish a coherent policy. The statutes are not complex and, notably, do not even provide for centralized review. *See* § 58-21-29 (providing that director may seek relief in "the district court of the first judicial district for Santa Fe county or other appropriate district court in the state"); § 58-21A-9 (providing that a borrower harmed by a violation of the Home Loan Protection Act may bring a civil action but not specifying where such an action should be brought). And, while not diminishing the importance of fair lending, it does not involve a "vital" State concern such as water resources in an arid region, *see Kaiser Steel*, 391 U.S. at 594, or an issue that "turns on legislation with much local variation interpreted in local settings" like eminent domain proceedings, *see Louisiana Power*, 360 U.S. at 28.

Finally, Plaintiff argues that the existence of a novel state law issue--whether foreclosure of real estate is proper when the refinance of a home loan does not provide a "net tangible benefit"-- requires that the Court abstain from exercising jurisdiction. While this may be an issue of first impression under New Mexico law, the Court does not agree that it is of "vital concern" such that the Court should abstain from exercising its jurisdiction. Where none of the abstention exceptions is applicable, the Court must follow the general rule in diversity cases that the federal district court decide state law questions without waiting for the state to clarify or resolve the state law issue. *See Allegheny County*, 360 U.S. at 188-89; *Meredith v. City of Winter Haven*, 320 U.S. 228, 236-37 (1943). The rationale behind this general rule is clear: since Congress has adopted a policy of opening the federal courts to diversity cases under

7

§ 1332, the federal courts should not nullify this policy by refusing to adjudicate such cases "merely because they involve state law or because the law is uncertain or difficult to determine." *Meredith*, 320 U.S. at 236.  If the highest court of the state has yet to rule on a controlling question of state law, or if the application of state law is uncertain, it is the task of the federal court "to carefully ... predict how the highest court of the forum state would resolve the uncertainty." *Bensmiller v. E.I. DuPont de Nemours & Co*., 47 F.3d 79, 82 (2d Cir. 1995) (internal quotation marks omitted).

Based on the evidence before the Court, this case is not one of the exceptional cases warranting a *Burford*-type abstention and Plaintiff's motion to abstain on *Burford*-type grounds will be denied.

II. *Colorado River* Doctrine

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (quotation omitted).  Both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action. *University of Maryland v. Peat Marwick Main & Company*, 923 F.2d 265, 275-276 (3rd Cir. 1991).  A narrow exception to this rule, however, was created by the *Colorado River* doctrine.

In *Colorado River*, the Court found that judicial economy concerns may justify deferral of a federal suit when pending state litigation would resolve the issues presented in the federal case. *See Colorado River*, 424 U.S. at 817-20.  The justification for deferral in such an instance is not to vindicate "Federalism," as the abstention doctrines do, *see Younger*, 401 U.S. at 44, but

rather to preserve judicial resources:[2]

> Although this case falls within none of the abstention categories, there are
> principles unrelated to considerations of proper constitutional adjudication and
> regard for federal-state relations which govern in situations involving the
> contemporaneous exercise of concurrent jurisdictions, either by federal courts or
> by state and federal courts.  These principles rest on considerations of "(w)ise
> judicial administration, giving regard to conservation of judicial resources and
> comprehensive disposition of litigation."

*Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342

U.S. 180, 183 (1952)).  Because the *Colorado River* doctrine is an exception to the Court's

jurisdictional mandate from Congress, the doctrine may only be used when "the clearest of

justifications ... warrant[s] dismissal." *Id*. at 819.

Under the *Colorado River* doctrine, district courts may abstain from the exercise of

jurisdiction when certain factors weigh in favor of deference to contemporaneous "parallel" state

court proceedings. *Fox v. Maulding*, 16 F.3d 1079, 1081-82 (10th Cir. 1994).  Thus, the Court

first must determine whether the state and federal proceedings are parallel and, if the suits are

parallel, then determine if the relevant factors weigh in favor of abstention.

1.  Parallel Suits

Suits are parallel if substantially the same parties litigate substantially the same issues in

different forums." " *Id*. at 1081 (citations and quotation omitted).  In making this determination,

the court should "examine the state proceedings as they actually exist to determine whether they

---

[2] Although the Supreme Court in *Colorado River* clearly stated that the *Colorado River*
doctrine was not a form of abstention, this distinction has been lost and many courts refer to
the doctrine as a type of abstention.  *See, e.g., Richmond, Fredericksburg & Potomac R.R. v. Forst*,
4 F.3d 244, 253 n. 20 (4th Cir. 1993) ("Although the Supreme Court made clear that the
Colorado River Doctrine was technically not a form of abstention, the distinction has been lost,
and we see no reason to revive it.") (citation omitted).  Regardless of the nomenclature, the
principles of the doctrine are the same.

are parallel to the federal proceedings," *id*., resolving any doubt "in favor of exercising federal jurisdiction," *id*. at 1082.  In this case, Plaintiff asserted identical claims in both the federal action and in her cross-claims in the state action.  While the state action involves an additional plaintiff and an additional claim, the two actions involve substantially the same parties litigating substantially the same issues.  Consequently, the Court finds that the federal action and the state action are parallel.

  2.  Consideration of the *Colorado River* Factors

   Having determined that the cases are parallel, the Court must next determine if "exceptional circumstances" exist such that the Court should not exercise its jurisdiction.  In making this determination, the Court considers a number of factors, including whether (1) "a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law[;]" (2) "difficult questions of state law" are present that impact "policy problems of substantial public import whose importance transcends the result in the case then at bar[;]" or (3) "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River*, 424 U.S. at 814-16 (quotation and citations omitted).  The Court may also consider such factors as the wise judicial administration with regard to conservation of judicial resources and comprehensive disposition of litigation, *id*. at 817, which court first assumed jurisdiction over the action, the inconvenience of the federal forum, and the desirability of avoiding piecemeal litigation, *id*. at 818.  These factors are not to be applied as "a mechanical checklist," but rather are to be carefully balanced "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1 (1983).

   This case does not involve federal constitutional issues, state criminal proceedings, or, as

discussed above, "difficult questions of state law" that affect "policy problems of substantial public import whose importance transcends the result in the case then at bar."  The two actions do not cause two courts to assume simultaneous jurisdiction over a single *res*, because the federal action is for damages only.  There is no contention that the federal forum is any less convenient to the parties than the state forum and the two actions were filed within days of each other so the order in which the proceedings were initiated does not support abstention.

Litigating the same issues in two forums unavoidably results in piecemeal litigation.  For this factor to weigh in favor of abstention, however, "there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review."  *See Ryan v. Johnson*, 115 F.3d 193, 198 (3rd Cir. 1997).  In the absence of any clearly articulated congressional policy applicable to this litigation, this factor does not support abstention.

Having considered the relevant factors, and mindful that abstention from the exercise of federal jurisdiction is the exception, not the rule, *Colorado River*, 424 U.S. at 813, the Court concludes that it should not abstain from exercising jurisdiction in this case.

<u>**CONCLUSION**</u>

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand to State Court or in the Alternative to Stay this Action Pending the Adjudication of the Related Foreclosure Suit, filed March 8, 2007, **[Doc. No. 7]** is **DENIED**.

Dated this 15th day of August, 2007.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

11

<u>Attorney for Plaintiff</u>:
  Michael J. Seibel

<u>Attorneys for Defendants</u>:
  Adam E. Lyons
  Daniel R. Delaney
  Eric P. Accomazzo
  Eric R. Burris